UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:13CV97

| | | |
|---|---|---|
| **DOYLE HENDERSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| **CAROLYN W. COLVIN, Acting Commissioner of Social Security,** | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the court upon Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 10) and the Commissioner's Motion for Summary Judgment (Doc. No. 13). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

**FINDINGS AND CONCLUSIONS**

**I.    Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits on May 13, 2010, alleging a disability onset date of April 19, 2010. Plaintiff's claim was denied both initially and on reconsideration; thereafter, Plaintiff requested and was granted a hearing before an administrative law judge ("ALJ").  After conducting a hearing, the ALJ issued a decision which was unfavorable to Plaintiff, from which Plaintiff appealed to the Appeals Council.

1

Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, Plaintiff timely filed this action.

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, *Smith v. Schwieker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, *supra*. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays v. Sullivan*, *supra*

.

## IV. Substantial Evidence

### A. Introduction

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. The undersigned finds that it is.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

(1) Whether the claimant is engaged in substantial gainful activity;

(2) Whether the claimant has a severe medically determinable impairment, or a combination of impairments that is severe;

(3) Whether the claimant's impairment or combination of impairments meets or medically equals one of the Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4) Whether the claimant has the residual functional capacity ("RFC") to perform the requirements of his past relevant work; and

(5) Whether the claimant is able to do any other work, considering his RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4)(i-v).

In this case, the Commissioner determined Plaintiff's claim at the fifth step of the sequential evaluation process.

### C. The Administrative Decision

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since April 19, 2010, the alleged onset date (Tr. 13, Finding 2). At the second step, the ALJ concluded that Plaintiff suffered from the following medically determinable severe impairments: L4 burst compression fracture status post laminectomies at L3-4 and L4-5, obesity and depression/anxiety (Tr. 13, Finding 3). At the third step, the ALJ determined that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled any of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1 (Tr. 13, Finding 4).

Next, the ALJ assessed Plaintiff's residual functional capacity ("RFC"), and made the following finding:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He is able to lift twenty pounds occasionally and 10 pounds frequently, stand and/or walk for six hours each, and sit for six hours in an eight hour workday. He would be capable of pushing/pulling with his lower extremities on an occasional basis, and could also climb, balance, stoop, crouch, and crawl occasionally. He is precluded from climbing ropes and scaffolds and . . . he would have to avoid concentrated exposures to temperature extremes, vibrations, and hazards. He is limited to performing simple 1-2 step functions.

(Tr. 16, Finding 5). In making this finding, the ALJ considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and 416.929 and Social Security Rulings ("SSR") 96-4p and 96-7p (Tr. 16). After consideration of the evidence, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but he further found that Plaintiff's statements regarding the severity of his symptoms and the extent of his limitations were not entirely credible (Tr. 19).

At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work as a grader and maintenance worker. (Tr. 22, Finding 6). At the fifth step, however, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 23, Finding 10). Specifically, the ALJ identified representative occupations such as cashier,

final inspector, and carder machine operator or bench assembler. (Tr. 23).

### D. Discussion

#### 1. Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error: (1) The ALJ did not properly evaluate the medical opinion evidence in violation of 20 C.F.R. § 404.1527, and (2) The Commissioner erred by not considering the impact of Plaintiff's borderline retarded intellectual functioning and his poor reading and writing skills on his ability to work. Plaintiff's assignments of error will be discussed seriatim.

#### 2. First Assignment of Error

Plaintiff argues that the ALJ erred by giving little weight to the medical opinions of Dr. Rhoton, Plaintiff's treating physician, and Ms. Larimore, a family nurse practitioner in his office. The medical opinion of a treating source such as Dr. Rhoton is entitled to controlling weight only if both of the following elements are satisfied: (1) it is supported by "clinical and laboratory diagnostic techniques" and (2) it is not inconsistent with other substantial evidence. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Where a medical opinion is not supported by objective evidence or is inconsistent with other substantial evidence, it is not entitled to controlling weight and, indeed, should be accorded significantly less weight. SSR 96-2p; *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); 20 C.F.R. §

404.1527(c)(2). Moreover, an adjudicator's evaluation of an opinion provided by a treating source "will generally not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular [treating] opinion." *McDowell v. Astrue*, No. 3:11-cv-652-RJC-DSC, 2012 WL 4499336, at *3 (W.D.N.C. Aug. 2, 2012) (Mag. J. Mem & Rec.) (citing *Christian v. Apfel*, No. 98-1673, 168 F.3d 481 (4th Cir. Dec. 31, 1998)), adopted, 2012 WL 4499283 (W.D.N.C. Sept. 28, 2012).

As a nurse, Ms. Larimore is not considered an "acceptable medical source" within the meaning of the governing regulations. 20 C.F.R. §§ 404.1513(a) & 416.913(a). Pursuant to those regulations, the Agency needs evidence from "acceptable medical sources" to establish whether a claimant is disabled. *Id*. Accordingly, the regulations do not obligate an ALJ to explain the weight that he accords to opinions from "other sources" such as Ms. Larimore. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Moreover, the Fourth Circuit has declared that the opinion of an "other source" such as Ms. Larimore is entitled to "significantly less weight" than the opinion of an "acceptable medical source" such as a physician or a psychologist. *Craig*, 76 F.3d at 590. The Agency has, however, promulgated guidance indicating that an ALJ must consider an opinion from an "other source" such as Ms. Larimore and "should" either (1) explain the weight she gives to such an opinion or (2) otherwise ensure that her discussion of the evidence allows a

7

subsequent reviewer to follow her reasoning when such an opinion may have an effect on the outcome of a case. SSR 06-3p, available at 2006 WL 2329939, at *6.

The ALJ herein accorded "little weight" to the opinions of Dr. Rhoton and Ms. Larimore (Tr. 20-21) and the Court finds that substantial evidence supports this decision. The ALJ correctly emphasizes that the opinions at issue "are inconsistent with [Dr. Rhoton's] treatment notes," including treatment notes that memorialize Plaintiff's "subjective reports of pain" (Tr. 21). The ALJ was entitled to discount these opinions on this ground. *Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) (ALJ entitled to discount opinion of treating physician on ground that it is inconsistent with physician's own treatment notes); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (ALJ properly refused to credit assessment by treating physician because it was inconsistent with physician's own treatment notes); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (ALJ properly discredited opinions of two treating physicians because they were inconsistent with physicians' own treatment notes).

Plaintiff injured his back in an accident that occurred in April 2010 (Tr. 368), then had surgery to address this injury in November 2010 (Tr. 461-66). Dr. Rhoton provided his opinion in July 2011, and attributed all of his opined limitations predominantly to Plaintiff's pain (Tr. 480-82). In sharp contrast to these opinions, and as the ALJ correctly states (Tr. 16), treatment notes from Dr.

Rhoton's practice – all of which postdate Plaintiff's accident – reflect that Plaintiff reported that his pain sometimes was only a one on a scale from zero (no pain) to ten (excruciating pain) (Tr. 423). In addition, and as the ALJ also correctly states (Tr. 17, 18, 20, 21), these treatment notes reflect that Plaintiff repeatedly reported that his pain was only a two (Tr. 453, 454, 457, 458), although, as the ALJ acknowledges, on one occasion, he reported it as a three (Tr. 447), and on another occasion as a four (Tr. 479). Further, and as the ALJ also correctly states (Tr. 20), these treatment notes reflect that Plaintiff consistently reported that his surgery relieved his pain at least somewhat (Tr. 453, 457, 458, 479). Moreover, these treatment notes also repeatedly indicate that Plaintiff was in no acute distress (Tr. 410, 412, 416, 454) and/or had no tenderness (Tr. 417, 419).

The ALJ also correctly notes that Plaintiff consistently reported that he was not in pain as long as he took his medication (Tr. 453, 457, 479). The Fourth Circuit has explained that, "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); see 20 C.F.R.§§ 404.1529(c)(3)(v); 416.929(c)(3)(v). Moreover, the ALJ accounted for any limitations arising from Plaintiff's medication by finding that Plaintiff was restricted to performing "simple 1-2 step functions" (Tr. 16, 21). Although Plaintiff did allege that increased activity caused an unspecified increase in the level of his pain (Tr. 454), nothing in the record

9

suggests that the activities associated with the jobs that the ALJ found Plaintiff capable of performing would cause him to suffer a disabling level of pain. To the contrary, and as the ALJ correctly emphasizes, Plaintiff reported that his medications "keep him active" (Tr. 18, 20, 21, referring to Tr. 477), that he was capable of performing a "wide array" of activities of daily living (Tr. 19; see also Tr. 15, 20, 21), and that he wanted to return to work (Tr. 18, referring to Tr. 455, 477).

The ALJ also explained that he gave little weight to the opinions of Dr. Rhoton and Ms. Larimore because they were inconsistent with Plaintiff's activities of daily living. (Tr. 21). The regulations allow this type of evidence to be considered in assessing Plaintiff's RFC. See 20 CFR §§ 404.1529(c)(3), 416.929(c)(3), 404.1529(c)(3)(i), 416.929(c)(3)(i) (claimant's "daily activities" and "pattern of daily living" are "important indicator[s] of the intensity and persistence of [her] symptoms"); SSR 96-7p, available at 1996 WL 374186, at *3, *5 & *7 ("daily activities" are material to assessment of RFC); *see Gross*, 785 F.2d at 1166 ("the pattern of [claimant's] daily activity suggests that he was not disabled from working").

In the instant case, the ALJ correctly recites (Tr. 15, 19, 20, 21) that Plaintiff was able to go walking (Tr. 56, 448); work in his shop making birdhouses for two and a half hours at a time (Tr. 41, 43); feed, walk, and otherwise care for several

10

animals, including walking his dogs (Tr. 55-56, 448); gather eggs (Tr. 56); attend church twice a month (Tr. 55); shop (Tr. 51); care for his personal needs (Tr. 48, 447); do household chores, including blowing leaves, doing a little cooking and laundry, washing a few dishes, and taking out the trash (Tr. 47, 53-54); and go out to eat (Tr. 55). Contrary to Plaintiff's position, the Fourth Circuit has held that an ALJ is entitled to find that a claimant is not disabled if he is able to engage in the kinds of activities that Plaintiff in the instant case performed. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (upholding finding that claimant's routine activities – including attending church, cooking, feeding pets, cleaning the house, and washing clothes – were inconsistent with complainant's alleged inability to work); *Gross*, 785 F.2d at 1166 ("the pattern of [claimant's] daily activity" – including shopping, cooking, washing dishes, generally taking care of a house, walking to town, and taking care of personal needs – "suggests that he was not disabled from working").

Accordingly, the Court finds that the ALJ properly evaluated the opinion evidence of Dr. Rhoton and Ms. Larimore and no error occurred.

### 3. Second Assignment of Error

Plaintiff next argues that the ALJ failed to properly consider Plaintiff's mental limitations. An ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 416.946(c). In making that assessment, he or she must

consider the functional limitations resulting from the claimant's medically determinable impairments. SSR 96-8p, available at 1996 WL 374184, at *2. It is the claimant's burden, however, to establish his RFC by demonstrating how his impairment impacts his functioning. See 20 C.F.R. §§ 404.1512(c), 416.912(c); *see also*, *e.g.*, *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("[t]he burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five"); *Plummer v. Astrue*, No. 5:11-cv- 00006, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Maj. J. Mem. & Rec.) ("[t]he claimant bears the burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing *Stormo*), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012).

Plaintiff argues that the ALJ did not consider that he did not make it past middle school and was able to read and write only a little. However, the ALJ specifically cited these facts in his Decision (Tr. 18). Moreover, the ALJ's assessment of Plaintiff's RFC gives "significant weight" to the opinion that Dr. Conroy provided concerning the limitations arising from Plaintiff's mental impairments (Tr. 22, referring to Tr. 447-49). Dr. Conroy examined Plaintiff and opined that he "could probably understand, retain, and follow instructions related to tasks involving manual labor" (Tr. 449). State agency psychologist Daniel

Nelson, Psy.D., specifically addressed this opinion (Tr. 103), and opined that Plaintiff was "able to understand simple instructions," despite his limitations in understanding, concentration, memory, and persistence (Tr. 112). The ALJ properly accounted for these restrictions by finding that Plaintiff retained the RFC to perform "simple 1-2 step functions" (Tr. 16).

In addition, one of Plaintiff's medical providers performed a mental status assessment in December 2010 and reported that Plaintiff was "able to focus and shift attention" and that he "comprehends and recalls task directions independently" (Tr. 470). As the ALJ correctly emphasizes (Tr. 22), this report supports the ALJ's finding that Plaintiff could perform "simple 1-2 step functions" (Tr. 16).

Plaintiff also emphasizes his testimony that his math skills were limited (Pl's Mem. 13, referring to Tr. 35). Dr. Conroy's report memorializes the facts that Plaintiff was unable to correctly answer a simple multiplication question and that, although he was able to correctly answer a series of simple subtraction questions, he did so "very slowly" (Tr. 449). As stated previously, Dr. Nelson specifically addressed Dr. Conroy's report, then opined that Plaintiff was able to understand simple instructions (Tr. 112). As also stated previously, the ALJ properly accounted for this restriction by including it in his RFC finding (Tr. 16).

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. *See Richardson v. Perales, supra*; *Hays v. Sullivan*, *supra*. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, *supra*, Plaintiff's Motion for Judgment on the Pleadings will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

### ORDER

**IT IS, THEREFORE, ORDERED** that

(1) the decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2) the Plaintiff's Motion for Judgment on the Pleadings (Doc. No. 10) is **DENIED**;

(3) the Commissioner's Motion for Summary Judgment (Doc. No. 13) is **GRANTED**; and

(4) this action is **DISMISSED**.

Signed: September 30, 2014

*Graham C. Mullen*
Graham C. Mullen
United States District Judge